JUDGE PRYOR
delivered the opinion oe the court.
The legislature of Kentucky, by an act approved in the month of February, 1868, and an amendment thereto during the same session, incorporated the Newport & Cincinnati Bridge Company for the purpose of constructing a bridge from the corporate limits of the city of Newport, in this state, across the Ohio River to the city of Cincinnati, in the state of Ohio. The company was empowered by its act of incorporation to purchase, or have condemned when necessary, so much land as was required for the site of the bridge or its abutments, and for suitable avenues leading to it, etc., with power also to lay railroad tracks for the passage of railroad engines and cars of all kinds over said bridge and its approaches, and to charge therefor, and to contract with any railroad company for the use of the same.
On the 12th of May, 1868, the bridge company obtained from the city council of Newport a grant of the right of way for its abutments, superstructure, and approaches over so much of Saratoga Street (one of the streets of that city), if found practicable, and if not, then over any other street within a certain limit, or so much thereof as might be necessary for the construction, superstructure, and approaches to said bridge, and for the use and operation thereof. It was also provided that the ordinance making this grant only vested the company with such rights and privileges as the city of Newport might lawfully grant in such streets for the uses and purposes mentioned; and in consideration of this grant the tolls over said bridge for all character of vehicles and foot-passengers were not to exceed certain specified rates, as then agreed upon by the parties, and made part of the ordinance.
Under this agreement with the city council, and by virtue of the act of incorporation, the company constructed the bridge, and in the process of construction, and for the purpose of making the approaches to it, elevated the grade of portions *266 of Saratoga and Taylor streets above the surface of some of the lots bordering thereon.
The appellees, John T. Foote and others, instituted the present action, alleging that they are the fee-simple owners of lots Nos. 137 and 138, fronting on Taylor and Saratoga streets; that their vendors, the original proprietors of these lots, dedicated that portion of these streets upon which they bordered with the implied covenant that they and their vendees should have the use of the whole of the street so dedicated as a means of ingress and egress to and from their lots, subject only to such regulations as the city authorities might make in regard to their grading and paving; that the appellant had elevated the grade of these streets, thereby obstructing their entrance to these lots, and had also erected a wall and iron railing dividing Taylor Street, so as to deprive them of the use of a moiety of that street, and had entirely obstructed their passage to the Ohio Elver along Saratoga Street, etc.
The appellant in answer relied upon its charter and the agreement with the city council of Newport by which it had the right to use these streets in making its approaches to the bridge, and insisting that the appellees had no greater right to the use of the streets than any other citizens of the place; also traversing all the allegations with reference to the damages alleged to have been sustained.
The law and facts were submitted to the court, and a judgment rendered in favor of the appellees for $3,036.01, with interest, etc., and from which this appeal is prosecuted.
The evidence in the case in behalf of the appellees conduces to show that at the junction of Saratoga and Taylor streets the grade of those streets has been elevated about four or five feet above the surface of appellees’ lots, and that this elevation of the grade extended westward on Taylor Street for at least one third of the front of the lot, and a like distance on Saratoga Street, making the present grade of the street from one to two *267 feet above the surface of the lot for that distance; that the ingress and egress to and from the ground of appellees has been obstructéd at these points by the change in the grade, and also by the erection of the wall in the center of Taylor Street, extending from a point in that street to the center of Saratoga Street near the bridge. This wall was erected to sustain the elevated grade on Taylor Street, and left a passway of twelve or fifteen feet between it and the sidewalk on the north side of the street, by which access is had to that part of Saratoga Street north of Taylor Street.
On either side of the approach to the bridge from where the elevation of the grade begins there is a passway, admitting the passage of two wagons or carriages abreast. It is also shown that the ground of appellees is a desirable site for a fine dwelling-house, if built so as to front Taylor Street, and that the front on Saratoga Street might be so divided as to erect upon it several good tenement-houses, also that the occupation of this street by the company has lessened the value of appellees’ ground fifteen or twenty-five per cent.
It was in evidence on the part of the appellant that the original natural surface of these lots was several feet above the present elevated grade of both Saratoga and Taylor streets all along the entire fronts; that the streets were cut down and the earth washed away from the front of the lots until the front surface was nearly on a level with the original grade, but sloping back to the original natural surface — the Taylor-street front and about one half of the Saratoga front had never been used except for a stable-lot or wagon-yard; that there was a frame cottage on the southeast corner of the Saratoga front, and deep gulleys in Saratoga Street before the grade was raised; that the ingress and egress in and to. the ground with ordinary teams had not been materially obstructed; that the wall in Taylor Street does not obstruct the view, or shut out the light or air — the lot at the south part of Saratoga Street is now *268 several feet above the present grade, and the gate and entrance to the ground on Taylor Street remains undisturbed, and is entirely west of the regrade; that the company has filled up the gulleys on Saratoga Street, paved both streets, made sidewalks on that part of the streets regraded by it, and while progressing with its work to completion it was executed with the utmost care and skill, and with the least inconvenience or injury to the adjacent property; also that the change of grade was beneficial to the lots, and the appellees have received no injury therefrom.
It is alleged, in the petition that the original proprietors of the lots now owned by the appellees dedicated therefrom all that portion of the ground in front of said lots constituting these streets to the public use, with the tacit agreement that the streets should remain sixty-six feet in width, and for the use of the future owners of said lots in their ingress and egress to and from their property. This allegation, although denied by the answer, is a mere legal conclusion as to the rights of the appellees, and the extent of their boundary as described in the petition and shown by the proof is “ that they are the owners in fee of lots Nos. 137 and 138, fronting on Saratoga and Taylor streets.” There is no written or other evidence in the case showing that appellees have any other or greater title to the ground occupied by the streets than is common to every citizen of Newport. It is true the presumption is that the soil of a highway forming the boundary of land belongs to the adjoining owners, but in this case it appears that by an act of the legislature approved December 14, 1795, by which the town of Newport was established, the title to the land was vested in trustees, with power to make conveyances of lots to the purchasers, and in the absence of any other evidence of title this court must indulge in the presumption that the fee-simple title to these streets is in the city of Newport and not in the appellees. No writ of ad quod damnum, was therefore *269 necessary to enable the company to occupy these streets, as the consent of the city council had been obtained for that purpose.
Conceding, however, that the appellees, in acquiring a conveyance to their lots, obtained the legal title to the streets adjacent, subject to the dedication made for the public use, and that the withdrawal of the first paragraph in the appellant’s answer leaves the title of the. appellees undenied, and in regard to which there is some doubt, it then becomes necessaiy to inquire as to the natux’e of the injury, if any, sustained by the appellees by reason of the construction of this improvement. The erection of this bridge is but an extension of the street known as Saratoga Street across the Ohio River to Cincinnati, by which the citizens of Newport, as well as the general public, are the beneficiaries in the facilities it affords for travel and transpox’tation, as well as being made the crossing of one of the great lines of railways in the state. The city of Newport was directly interested in this great improvement, and its completion (without regard to the consideration ixxserted in the ordinance) was a full compensation for the mere grant of the right of way over one or more of the streets for its approaches. This court, in the leading case in this state of Lexington & Ohio Railroad Company v. Applegate (8 Dana, 289), in an opinion delivered by that enlightened jurist, Chief Justice Robertson, adjudged that the city government of Louisville had the power to permit a railroad corporation to locate, use, and construct its track over one of the streets of that city, and that no writ of ad quod damnum was necessary, except in cases where private rights were invaded, or the use of the street made inconsistent with the objects for which it was oxfiginally dedicated. The doc.ti’ine established in this case has not only been followed and recognized by the courts of this state, but by those of many of the sister states. The same docti'ine was recognized by this court in the case of Wolfe v. Covington & Lexington Railroad Company (15 B. Mon. 404), and in a still *270 later case of the Louisville & Frankfort Railroad v. Brown (17 B. Mon. 763).
The right of the city of Newport to construct the approaches to this bridge, or even the improvement itself, by proper legislative enactment, can not be questioned. It is no misapplication of the purposes for which the dedication of these streets was made to permit railway tracks to be laid upon them; for instead of diminishing in any way the public use, they have been made the principal thoroughfares in the city. The right of way is still used and enjoyed by the citizens in an improved condition, subject only to the inconvenience that must necessarily follow the construction of a railway over this elevated grade. The city has made no other grant of right or title to the use of the streets than that vested in the city by its charter; and if the appellees are the owners of the fee subject to this public use, they have not been deprived of it by the city authorities. The right of property has not been interfered with by the appellant, and the appellees are entitled to no compensation, unless by way of damages to their adjacent lots, in lessening their value for building purposes by reason of the construction of this improvement. In the case of Chapman v. The Albany & Schenectady Railroad Company (10 Bar. 360) it was held “ that a railroad corporation constructing its road through one of the streets of a city, under a legislative enactment and by the consent of the council, is not liable for consequential damages sustained by reason of the elevation of the grade of the street, provided the authority given the company is exercised with skill and care; and that those who purchase lands adjacent to such streets must be deemed to take their title subject to the appropriation of the streets to such purposes and objects as the public interest shall require; and the only restriction upon this appropriation is that the use to be made of the streets must not be incompatible with the ends for which they were established. There is no rule of law which *271 gives to the owners of property adjacent to an improvement consequential damages by reason of such improvement, when constructed with care and skill, and in such manner as not to interfere with any private right, such as the right to light, air, or passway, or by destroying the use and enjoyment of the buildings erected on adjacent land by leaving such a small intervening space between the building and the improvement as to prevent ingress and egress; for in such eases actual and direct damages are sustained. This court, in the case of the Louisvilie & Frankfort Railroad Company v. Brown, &c. (supra), adjudged that the occupation of the center of one of the streets of Frankfort by that company, by laying its track with an elevation of the grade some five or six feet above the original grade of the street, was not an invasion of the right of property, and that the right of the citizen to use the street “ was subordinate to the equally well-established right of the municipal power of the city to make such appropriation of the streets as in their opinion would best promote the interests and business of the local community.” It is also said in the same opinion that “if it ever was the rule that streets could only be appropriated to the use of those who may have occasion to travel over them, either on foot or by means of animal power, it is very certain that the progress of improvements and the exigencies of society have left such a rule far behind;” and therefore consequential damages were denied the owners of the adjacent property.
In the case of Keasy v. City of Louisville (4 Dana, 154) it was also adjudged that the city authorities had the right to regrade a street for any public purpose, and were not responsible for the inconvenience or obstructions to which the plaintiff was thereby subjected, although his house had been built to suit the original grade, and the regrading complained of had raised the street several feet above the level of his lot; and the same doctrine was again recognized in the case of Wolfe v. The *272 Covington & Lexington Railroad Company (15 B. Mon. 404). In every case heretofore decided by this court this doctrine has been adhered to, and the right to recover consequential damages denied.
In the cases cited by appellees’ counsel it will be found that the damages the owners of property adjacent to such improvements had sustained by reason of the elevation of the streets or in their construction were proximate and direct.
In the case of the City of Louisville v. The Louisville Rolling-mill Company, the latter was not only required to aid in making the improvement, but the only passway used to bring materials to the factory was entirely closed, “ and the light and air so essential to the operation of the machinery obstructed.” But in this same case it is said “ that as the legal right to the public easement of the streets was in the city council, and held for the common use of all, there is no doubt but what, as long as the improvement was confined to the boundary of the street and interfered with no private right of air, light, or passway, the incidental injury to owners of lots would be that class of misfortunes for which no remedy for the injury is afforded by law.”
In the case of the Louisville & Nashville Railroad Company v. Hodge, the improper construction of the embankment or elevated grade caused the water to overflow the land, and by reason of its stagnation subjected the occupants to injury. In all these cases it is made to appear that some actual and direct damage had been sustained or private right invaded.
The appellees in the present action have the same free and undisturbed use and enjoyment of the streets that other citizens of Newport have, and in applying the well-settled principles of law to the facts proven we can not adjudge that they are entitled to damages. The passway on each side of the approaches to the bridge is of sufficient width for all the ordinary purposes of travel, and it might well be said that even if the streets were obstructed without an injury to private right, the *273 remedy is not in an action on the part of the citizen, but in the public. That the city had the right to elevate the grade of these streets, or authorize it to be done -when necessary for public use and so applied, is clearly settled. The free and unobstructed passage to these streets by the appellees from their lots has only been interfered with, from their own proof, for a certain distance upon each, and then only by an elevation of the grade one foot, except at the intersection of the two streets. The private rights of the appellees have not been interfered with, and the mere consequential damages resulting from the location of this improvement adjacent to appellees’ ground constitutes no cause of action. We have no doubt, from the evidence, that the lots have been lessened in value for building-sites by the construction of this bridge and the avenues leading to it; still mere incidental advantages or disadvantages can not be made the subject of equitable apportionment by this court in a case like this; and while some may lose-by the depreciation of property on account of the location of these great improvements, others are greatly benefited. The legislature of the state vested the appellant with the right to construct this bridge, and the city council of Newport, by reason of this legislative grant, permitted the use of a portion of the streets of the city as avenues to it, and in so doing have neither injured the public nor violated any private right. The company has exercised this lawful right in a legitimate way. Whether the legislature and city council acted wisely in granting these privileges is not properly the subject of inquiry in this case, and if the appellees have sustained loss, it is damnum absque injuria.
Wherefore the judgment of the court below is reversed, and cause remanded with directions to award to the appellant a new trial, and for further proceedings consistent with this opinion.